# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-3591/01-3592

_____

Rhonda Moses Warren,         *
                                             *

       Appellee/Cross-Appellant,      *

                                             *

       v.                                  *    Appeal from the United States
                                             *    District Court for the Eastern

Steve Prejean, Missouri Department    *    District of Missouri.
of Social Services, Division of            *
Youth Services,                      *

                                             *

       Appellants/Cross-Appellees.    *

_____

Submitted: June 12, 2002

Filed: August 14, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Missouri Division of Youth Services ("DYS") and Steve Prejean (hereinafter "Appellants") appeal from the result of a jury trial held in October 2000. Appellants seek to vacate the jury verdict in favor of Rhonda Moses Warren and the granting of a new trial or, in the alternative, they request judgment as a matter of law on Counts I, II and III. Appellants further seek dismissal of Count II of the complaint and ask

that this court vacate the district court's[1] Amended Judgment of September 28, 2001, in favor of Warren. Finally, Appellants argue that the 825 hours awarded to Warren for attorney fees is unreasonable and excessive, and that pre-litigation fees and costs are non-compensable.

Warren cross-appeals, seeking reinstatement of the judgment entered October 31, 2000, awarding damages totaling $730,000. Warren also seeks an affirmation of the trial court's award of attorney fees and costs. For the reasons that follow, we affirm the district court.

## I.    BACKGROUND

We recite the facts in the light most favorable to the jury's verdict. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 613 (8th Cir. 2000). Warren worked for the W.E. Sears Youth Center ("Sears"), a facility which is part of DYS, as a youth specialist from July 1989 until December 15, 1995, the date of her termination. Youth specialists are directly involved in the custody, control, and care of the juveniles at the facility and assist in their rehabilitation. In June 1991, Warren filed a grievance with DYS alleging that the male youth specialists were receiving preferential schedules with respect to midnight shift assignments. The grievance was resolved in Warren's favor, and DYS committed to changing the scheduling so that the midnight shift was allocated equally between men and women. The events following the grievance form the basis of Warren's claims of retaliation and discrimination, and provide the framework for evidence introduced at trial in October 2000.

_____

[1]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri. The parties consented to trial before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), with direct review to this court.

Steve Prejean was the facility manager at the time Warren filed her grievance. At that same time, John Gibbons was a Youth Specialist in Warren's group. Gibbons was upset by the grievance procedure because the decision to equally allocate the midnight shift to men and women disrupted his family life. Dennis Seidner, the personnel officer who ultimately approved the decision to terminate Warren, was directly involved in processing Warren's grievance.

Warren claims that immediately following the filing of the grievance, she experienced retaliation from both Gibbons and Prejean. For example, Gibbons refused to work with Warren and accused Warren of sleeping on the job two or three weeks later. Warren testified that Prejean also warned her not to file any more grievances, not to make any more complaints, and to be a good girl. Prejean also revealed to the supervisory staff in violation of DYS' confidentiality policy that Warren filed a grievance. Warren ultimately sought a transfer to another unit shortly after the grievance incident. Her new supervisor, Naomi Backus, immediately warned Warren that she knew of the grievance and did not want any problems. Prejean also warned other employees about Warren. However, Backus ultimately gave Warren "highly successful" performance evaluations for the next two years.

At all times following the grievance, the relationship between Warren and Prejean remained strained. In fact, at one time Prejean told Warren that she was too assertive for a woman, and Warren noted Prejean's intimidating attitude toward her during visits in his office. When Warren was later accused of improper behavior with the youth, Prejean told her that she would finally know what it feels like to go through the grievance process. In the summer of 1993, Gibbons became Warren's supervisor. Within two weeks, Warren's work life changed and she noticed little problems like irregular scheduling and denial of time off that she had previously scheduled. At trial, Warren and Melissa Swift, a Sears counselor, testified that during the next two years Gibbons treated Warren disparately, including lower performance ratings, unfavorable work schedules, and rejecting her suggestions at team meetings.

Gibbons also confirmed that when he took part in a panel interview for a teaching position for which Warren had applied, he described her as largely incompetent, plotting and manipulative, nefarious, dishonest, underhanded, and a high-maintenance employee in the truest sense of the word. However, Warren was never disciplined during the six and one-half years of her employment with DYS prior to the circumstances that led to her dismissal.

In 1995, numerous complaints surfaced regarding Warren. The accusations included inappropriate physical contact with juveniles; inappropriate physical contact with co-workers; sexual harassment of John Westerman, a contract social worker; and three incidents of sleeping during her shift. Warren testified that on November 3, 1995, Prejean and Gibbons told her that there would be an investigation into certain allegations, would not tell Warren what exactly those allegations were, and placed her on administrative leave, escorting her off the property. Another employee testified at trial that she overheard Gibbons discussing Warren's leave with someone and that Gibbons stated that it had taken them several years to get it done. Gibbons and Prejean investigated the allegations against Warren, and Seidner relied upon that investigation in determining whether to terminate Warren. Warren received her letter of termination at the end of November 1995.

During the investigation, Gibbons and Prejean collected statements from Warren's co-workers and numerous youths in Warren's group. Warren claims that these statements were fabricated and she spent a great deal of time at trial attempting to prove this theory. In support of her theory, Warren presented testimony from the youths' counselors, who said that the youths in Warren's group revealed to them that Gibbons approached the youths and asked them to write negative statements about Warren. Additionally, many of Warren's co-worker's statements were written by Gibbons and signed by the employee. One employee testified that he was called into Prejean's office three or four times, and that Gibbons and Prejean coerced him into signing statements supporting the allegations against Warren. Warren also presented

-4-

evidence that Westerman's allegations of sexual harassment were fabricated. Westerman's allegations consisted largely of incidents that occurred when he turned around and bumped into Warren's chest. Westerman admitted that he had a professional conflict with Warren, and that the income he received from Sears increased significantly in the years following Warren's termination.

Warren filed this lawsuit alleging that DYS discriminated against her on the basis of sex and retaliated against her in violation of Title VII (Counts I and II). She also filed a Section 1983 claim against Steve Prejean, and a corresponding state law claim for intentional infliction of emotion distress against DYS (Counts III and IV respectively). At the close of Warren's evidence, the district court granted Prejean's motion for judgment as a matter of law on Count IV. The jury returned a verdict in favor of Warren, awarding Warren $60,000 in actual damages and $150,000 in compensatory damages on each of her three claims in addition to $100,000 in punitive damages on Count III. This initial judgment totaled $730,000. On September 28, 2001, the district court reduced the judgment to a total of $60,000 in actual damages and $150,000 in compensatory damages for all three claims, thus reducing the total award to $310,000. The district court also awarded attorney fees in its September 28, 2001, order.

## II.    DISCUSSION

### A.    Lack of Subject Matter Jurisdiction

The first of Appellants' many points of error is that Count II of Warren's complaint, alleging retaliation pursuant to 42 U.S.C. § 2000e-3(a), should be dismissed for lack of subject matter jurisdiction. The district court denied Appellants' motion to dismiss in its September 28, 2001, order. We review the district court's conclusions of law de novo. Lewis v. Wilson, 253 F.3d 1077, 1079 (8th Cir. 2001), cert. denied, 122 S. Ct. 1536 (2002).

Appellants claim that the retaliation provision in the Civil Rights Act of 1964 exceeds Congress' authority to abrogate Missouri's Eleventh Amendment immunity, arguing that section 704(a) of Title VII is not a valid exercise of Congress' authority under the Fourteenth Amendment. Appellants contend that Congress failed to identify widespread patterns of retaliation against employees for filing internal grievances complaining of gender discrimination, there was no evidence that other existing federal remedies were insufficient to enforce the Constitution, and section 2000e-3 is not congruent and proportional to the injury being prevented. See Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 635-48 (1999) (articulating the elements required for Congress to validly abrogate a state's sovereign immunity). However, this Circuit has consistently held that Congress validly abrogated the Eleventh Amendment with the enactment of Title VII. See, e.g., Maitland v. Univ. of Minn., 260 F.3d 959, 964 (8th Cir. 2001) (addressing Title VII sex discrimination claims); Okruhlik v. Univ. of Ark., 255 F.3d 615, 626-27 (8th Cir. 2001) ("[Congress] validly abrogated the Eleventh Amendment for claims of disparate treatment and impact on the basis of gender and race."); Winbush v. Iowa, 66 F.3d 1471, 1483 (8th Cir. 1995) (holding that Congress exercised its power under the Fourteenth Amendment to abrogate broadly states' Eleventh Amendment immunity to suits under Title VII, and courts have the power to award prejudgment interest against state defendants under Title VII accordingly).

Accordingly, the retaliation provision of Title VII is an adequate exercise of Congress' authority under section 5 of the Fourteenth Amendment. The fact that Congress did not specifically note in the legislative record a widespread pattern of retaliatory discharge by the states is not dispositive because such a specific finding is not necessarily determinative of the issue. Okruhlik, 255 F.3d at 624 (citing Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. at 646). Such a parsing of the legislative findings with regard to Title VII is unnecessary. Maitland, 260 F.3d at 965. "Title VII was enacted and amended in accord with the strictures of Section

5." Id. In enacting and amending Title VII, Congress "held extensive hearings and received numerous reports detailing racial and gender discrimination by the states." Okruhlik, 255 F.3d at 625. As such, Appellants' claim that the district court lacked jurisdiction over Warren's claim of retaliation under Title VII fails.

## B.  JAML - Retaliation Claim

Appellants also argue that the district court should have granted their motion for judgment as a matter of law on Count II because the evidence as to causation was insufficient. We review a district court's denial of JAML de novo, applying the same standards used by the district court. Phillips v. Union Pacific R.R. Co., 216 F.3d 703, 705-06 (8th Cir. 2000). "In making this determination, we view all facts in the light most favorable to the non-moving party, giving her the benefit of all reasonable inferences." Id. at 706. We will reverse the district court only when the evidence is susceptible to no reasonable interpretation supporting the verdict. Jaros v. LodgeNet Entm't Corp., 294 F.3d 960, 964 (8th Cir. 2002). Because Warren's termination occurred approximately four and one-half years after she filed her grievance regarding the scheduling inadequacies, Appellants claim there was no causal connection between the two as a matter of law.

The key in our consideration is that Warren's evidence supporting her claim of retaliation was not just based on timing, she also provided direct and circumstantial evidence that her termination was retaliatory, and that it was the end result of an *ongoing* pattern of retaliatory behavior. For example, there was testimony supporting Warren's contention that Gibbons treated her disparately during the course of his supervision, that this unfavorable treatment was directly tied to Warren's grievance, that Prejean and Gibbons acted in concert during the ultimate investigation of Warren, and that she was denied a promotion for which she was interviewed by Prejean, Gibbons, and one other employee. Accordingly, the district court correctly denied Appellants' motion for JAML on Warren's Title VII retaliation claim.

-7-

### C. Jury Instructions

Appellants also make several arguments with respect to jury instructions. We review the jury instructions given by a district court for an abuse of discretion. See, e.g., B&B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012-13 (8th Cir. 2001) (emphasizing the district court's broad discretion in instructing the jury, and recognizing that jury instructions do not need to be technically perfect or even a model of clarity). Our review is limited to whether the jury instructions, taken as a whole, "'fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001) (quoting St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 594 (8th Cir. 2001)). "Moreover, even where a jury instruction is erroneously given to the jury, reversal is warranted only where the error affects the substantial rights of the parties." Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002) (Beam, J., dissenting). In other words, the error must be prejudicial. Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998).

Appellants claim that the district court did not correctly instruct the jury on the proper causation standard on the retaliation claim. Instructions seven, eight and twelve are at issue in this regard according to Appellants. In conference, Appellants objected to instructions seven and twelve, but not instruction eight. As to instruction eight, we review for plain error. Id. ("[W]here a party fails to make a timely and adequate objection before the trial court to a matter subsequently raised on appeal, this court will review the matter only for 'plain error.'") (quoting Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995) (en banc)).

Instructions seven and eight deal with Warren's claim of gender discrimination. Instruction twelve addresses Warren's claim of unlawful retaliation. We are unsure what exactly Appellants claim as error with instructions seven and eight because the body of the brief only addresses instruction twelve, merely including seven and eight

in the title paragraph. We presume, based on our reading of the argument regarding instruction twelve, that the alleged error lies within the "motivating factor" language found in each of these instructions and we will review seven, eight, and twelve from this perspective.

Appellants argue that the causation standard in retaliation cases requires a "but for" relation. This argument is based upon our prior language, which states that "'[e]ven if the protected conduct is a substantial element in the decision to terminate the employee, the employer will not be liable if the employee would have been discharged in the absence of the protected conduct.'" Akeyo v. O'Hanlon, 75 F.3d 370, 373 (8th Cir. 1996) (quoting Maness v. Star-Kist Foods, Inc., 7 F.3d 704, 708 (8th Cir. 1994)) (alteration in original). This analysis is unfounded.

Under Title VII, in order to establish a prima facie case of retaliation and get a claim before a jury, a plaintiff must show, among other elements, that there was a causal connection between the adverse employment action and the protected activity. Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998). Instructing the jury that Warren must prove by a preponderance of the evidence that her sex and grievance were motivating factors in DYS' decision to discharge her, fairly and adequately reflects the applicable law of this circuit. We conclude that the district court appropriately instructed the jury in instructions seven, eight and twelve. There was no plain error or abuse of discretion.

Appellants further claim that the district court erred in refusing their jury instruction A and giving jury instruction nine. Appellants offered instruction A to make it clear to the jury that Prejean, as an individual, was liable, if at all, for acts and deprivations that he committed and that he could not be found liable because of the conduct of others working at the Sears facility, citing Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). The district court denied the inclusion of instruction A and read instruction nine to the jury instead.

<u>Madewell</u> stands for the proposition that "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." <u>Id.</u> Instruction nine reads:

> Defendant DYS may act only through natural persons as its agents or employees and in general any agent or employee of DYS may bind DYS by his acts and declarations made while acting in the scope of his authority delegated to him by DYS or while within the scope of his duties as an employee of DYS.

Appellants argue that instruction nine erroneously told the jury that any employee of DYS may bind DYS as agents, and invited the jury to place liability on Prejean for acts or omissions of other DYS employees. Warren responds that instruction nine was necessary because Appellants consistently attempted to mislead the jury by suggesting that DYS could only be held liable for the discriminatory acts of Seidner, the facility personnel manager, and not for those of other supervisory employees involved in the termination process.

"This Circuit has previously recognized [the] application of agency principles in the Title VII context." <u>Kramer v. Logan County Sch. Dist. No. R-1</u>, 157 F.3d 620, 624 (8th Cir. 1998) (citing <u>Kientzy v. McDonnell Douglas Corp.</u>, 990 F.2d 1051, 1060 (8th Cir. 1993)). For example, while it is true that stray remarks in the workplace do not necessarily create liability for employers, liability does attach if discrimination played a role in the ultimate decisionmaking process, thus creating potential liability for employers due to certain acts of their employees. <u>Gagnon v. Sprint Corp.</u>, 284 F.3d 839, 848-49 (8th Cir. 2002).

We cannot say the district court abused its discretion in giving instruction nine to the jury. Instruction nine deals directly with the liability of DYS. There is ample evidence to infer that those with whom DYS invested supervisory authority engaged in discriminatory actions. Instruction nine merely explains how those actions are

attributable to DYS. Viewing the instructions as a whole, as we must, we hold that they fairly and adequately represent the evidence and applicable law of this circuit in light of the issues presented to the jury. Ford, 265 F.3d at 679. Notwithstanding this determination, we find no prejudicial effect from the inclusion of instruction nine, as instructions fifteen, sixteen, and seventeen set forth guidelines for determining Prejean's individual liability, and there was ample evidence introduced at trial of Prejean's direct participation in the events leading up to and including Warren's termination. Accordingly, Appellants' claims of instructional error are without merit.

### D.     JAML - **Equal Protection Claim**

We next move to Appellants' contention that the district court should have granted JAML in their favor on Warren's equal protection claim because there was insufficient evidence to go before the jury. Our review of the record leads us to conclude that this claim is also without merit. As before, we review the district court's denial of JAML de novo. Phillips, 216 F.3d at 705-06. Appellants argue that there was insufficient proof that Prejean terminated Warren, and that Warren did not identify similarly situated male employees that Prejean allegedly disciplined differently than her.

The fact that Seidner was the individual who signed off on Warren's termination does not necessarily mean that Prejean did not play a significant role in the termination process. "Courts look beyond the moment a decision was made in order to determine whether statements or comments made by other managerial employees played a role in the ultimate decisionmaking process." Gagnon, 284 F.3d at 848. Warren presented significant evidence that Prejean had supervisory authority over her at one time and that Prejean was actively involved in the decision to terminate her. In fact there was testimony from several witnesses at trial that Prejean investigated the allegations against Warren and that Seidner relied on the integrity of

-11-

that investigation.[2] Consequently, the fact that Seidner's signature was on Warren's termination papers is not dispositive.

Warren also presented sufficient evidence of other similarly situated male employees at the Sears facility who were treated differently. This evidence primarily circulates around Doug Block, J.B. Hayes, and Ron Davis, all employees at the Sears facility. "To show that employees are similarly situated, a plaintiff need only establish that he or she was treated differently than other employees whose violations were of 'comparable seriousness.'" Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 488 (8th Cir. 1998). Appellants claim that Hayes was disciplined for verbal sexual harassment, Davis engaged in verbal sexual harassment and Block was sleeping once at night while youths were asleep, and that each of these instances were quite distinct from the allegations facing Warren. However, Warren presented testimony from Block that he was accused of sleeping on two or three occasions, another employee testified that he reported Block sleeping as many as nine times, and that Hayes was accused of sexual harassment five times. The most significant factual dispute includes Davis. Warren presented evidence that Davis had been accused of physical abuse of youth at the facility on numerous occasions, and that he engaged in emotional abuse of the youths on several occasions as well. Without belaboring the point, it is clear that there was significant support for Warren's claim that other males,

_____

[2]Under the same analysis, Prejean is not entitled to qualified immunity. Not only have we addressed the fact that Seidner's signature on the termination sheet does not necessarily insulate those who played a key role in the decisionmaking process, Gagnon, 284 F.3d at 848, there was ample evidence that Prejean actively participated in the termination process. Therefore, Warren did state a claim against Prejean. Further, "[o]fficials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hedges v. Poletis, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Prejean's conduct violated a clearly established statutory or constitutional right of which a reasonable facility manager would have known in November 1995.

similarly situated, received different treatment.  Taken as a whole, there was sufficient evidence as a matter of law to put this before the jury, and they held in Warren's favor on this question of fact as conflicts in the evidence are for the jury to decide.  See Hathaway v. Runyon, 132 F.3d 1214, 1225 (8th Cir. 1997).  As such, we find no error.

### E.    JAML - Pretext and Gender Discrimination

We disagree with Appellants' claim that the district court should have granted JAML on Warren's Counts I and II.  Appellants claim there was insufficient evidence of pretext on Counts I and II, and gender discrimination on Count I.  Much of Appellants' claim rests on the credibility of Seidner's testimony where he states his reasons for Warren's termination.  While this is probative evidence supporting Appellants' position, it was not the only testimony before the jury and this court will not engage in a weighing or evaluation of the evidence, as these are jury functions. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

Along with circumstantial evidence of Appellants' discriminatory acts in general, Warren presented evidence that the allegations against her were fabricated and that Appellants asked witnesses to falsify statements.  "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Id. at 151.  Applying this principle, we affirm the judgment of the district court denying Appellants' motion for judgment as a matter of law.

### F.    JAML - Emotional Distress, Lost Wages, Punitive Damages

The balance of the arguments offered by Appellants concerning the district court's denial of their motions for judgment as a matter of law cover the emotional distress and lost wages verdicts for Counts I, II and III; and the punitive damages

-13-

award for Count III. Again, viewing the evidence in the light most favorable to Warren, we affirm the district court. Id. at 150.

As Appellants recognize, Warren presented evidence of emotional distress including her own testimony, the testimony of her counselor and also the testimony of her aunt. This testimony revealed the time period in which the alleged discrimination and retaliatory acts occurred, as well as the specific effect these events had on Warren both physically and emotionally. After carefully reviewing the record, this evidence was sufficient to put the issue before the jury. The jury drew their own conclusions accordingly and we will not disturb this finding. See Ross v. Douglas Cty., 234 F.3d 391, 397 (8th Cir. 2000) (affirming an award of $100,000 for emotional distress resulting from emotional and financial strain after leaving hostile work environment).

As for lost wages, Appellants claim that there was no evidentiary support for Warren's testimony of the dollar amount of her per month projected salary in 1996-2000 or for the estimated retirement benefits. Appellants essentially object to the content of Warren's Exhibit 81, which sets forth her projected DYS annual salary as well as projected health and retirement benefits. However, Appellants did not object to the introduction of this evidence at trial. As a result, we review this evidence for plain error, and find none.

Finally, addressing the punitive damages awarded in this case, we agree with the well-reasoned opinion of the district court set forth in its September 28, 2001, order. "[A]ppellate review of the trial court's determination in this regard is limited to an abuse of discretion." Grabinski v. Blue Springs Ford Sales, Inc., 136 F.3d 565, 572 (8th Cir. 1998). After carefully reviewing the evidence, we conclude that $100,000 is not grossly excessive and the district court did not abuse its discretion in this regard. See Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1062 (8th Cir.

-14-

1993) (applying a clear abuse of discretion standard and upholding an award of $400,000).

## G.    Attorney Fees

Appellants further ask us to vacate the fee awarded Warren's counsel, claiming that 825 hours is excessive, and that it included 262 hours of pre-litigation work.  A district court's award of attorney fees is reviewed for abuse of discretion.  Webner v. Titan Distrib., Inc., 267 F.3d 828, 838 (8th Cir. 2001).  "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours expended by the reasonable hourly rates."  Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002) (citation omitted).  Appellants do not contend that the hourly rates are out of line in this case, but that the total number of hours were excessive, redundant or otherwise unnecessary.  However, the district court was in the best position to assess the work done by counsel, spending a great deal of time setting forth the basis for its conclusion regarding fees in this case in its September 28, 2001, order and we rely on its well-reasoned analysis in our affirmation.  See 8th Cir. R. 47B.

## H.    Motion for New Trial

Finally, Appellants contend that the district court wrongly denied their motion for a new trial, arguing there was an instructional error and improper admission and exclusion of evidence.  "When a motion for new trial is based on rulings regarding the admissibility of evidence, the district court will not be reversed absent a clear and prejudicial abuse of discretion."  Mattis v. Carlon Elec. Prods., 295 F.3d 856, 863 (8th Cir. 2002) (citation omitted).

The testimony in question includes the district court's exclusion of Marci Legrand, who was to testify about instances of Warren's alleged misbehavior; Lesi

-15-

Smith, who was to testify about the same; and the exclusion of all references to Warren's State Personnel Advisory Board hearing. The alleged improperly admitted testimony includes:

1) the crying testimony of Warren;
2) the testimony regarding the similarly-situated males;
3) the testimony of Melissa Swift and Frederick Hackman concerning the accusatory statements provided by Sears youth that Prejean claims was prejudicial;
4) the testimony of Aunt Pruitt who was allegedly first disclosed to Prejean on the pre-trial witness list;
5) the testimony of Charmagne Schneider that Prejean claims was based exclusively on hearsay;
6) Plaintiff's Exhibit 25, which was a procedure dealing with investigations;
7) all testimony concerning Warren's 1994 application for a teaching job;
8) the testimony of Marie Patterson regarding her opinion of Prejean's preference in women; and
9) the testimony of Cathie Gilliland, Warren's counselor, which Prejean claims was improper expert testimony.

Appellants also challenge the fact that the district court failed to hold a Rule 412 hearing concerning the sexual behavior of Westerman and improperly admitted Plaintiff's Exhibit 81 without proper foundation.[3]

We find no abuse of discretion by the district court on each of these rulings but pause to write further on a few of the above-mentioned contentions. For example, Appellants claim that both Legrand and Smith should have been allowed to testify

---

[3]We previously addressed the issue concerning Plantiff's Exhibit 81 in section F of this opinion. Not only did Prejean fail to object to the admission of this document at trial, but Warren proceeded to set forth its foundation at the suggestion of Prejean.

about Warren's alleged inappropriate conduct and to raise issues of credibility as to Warren's prior testimony. Legrand gave information to DYS nearly eight months after Warren was terminated and the district court concluded that because DYS did not rely upon Legrand's information, her testimony was irrelevant. Smith was excluded because her testimony also dealt with information that was not included in DYS' file nor was it part of the decision to terminate Warren. The district court determined that this testimony was after-acquired evidence and irrelevant as to the information known to DYS at the time of the termination. We agree.

The district court allowed Warren to elicit the testimony of Swift and Hackman under Federal Rule of Evidence 807. Swift and Hackman were each counselors at Sears who worked with the youths that made allegations against Warren. Their testimony supported the inference that the youths were, in fact, coerced into making the allegations against Warren or were rewarded for doing so. Warren introduced this testimony to counteract the written statements of the youths introduced at trial by Appellants accusing Warren of inappropriate behavior. The district court received the out-of-court statements from the youths purportedly as proof of the state of mind of Appellants, and not, apparently, for the truth of the matters stated. However, this was possibly error since the relevance of the evidence very likely depended upon the truth of the statements offered. But, we need not decide this question. Appellants successfully introduced these damaging statements, over timely objection, and now challenge Warren's right to complete the scenario. Warren properly attacked the credibility of the youths' statements through testimony from the youths' counselors tending to demonstrate the actual state of mind of the declarants, the youths themselves, at the time they signed the declarations. Whether or not the statements offered by Appellants were properly received, the district court did not abuse its discretion in receiving Warren's responsive evidence.

Appellants further claim that the district court should have held a Rule 412 hearing regarding the sexual behavior of Westerman. Under Rule 412(a) "[e]vidence

-17-

offered to prove that any alleged victim engaged in other sexual behavior" is inadmissible. However, an exception exists in Rule 412(b)(2), which states that "[i]n a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."

Conceding the fact that Rule 412 applies to sexual harassment lawsuits, see Beard v. Flying J, Inc., 266 F.3d 792, 801 (8th Cir. 2001) ("we have not previously determined whether Rule 412 applies to sexual harassment lawsuits"), Warren's testimony about Westerman's statements concerning his own sexual history and preferences is not "other sexual behavior" excluded by Rule 412. By its introduction, Warren merely attempted to discredit Westerman's claims that Warren had sexually harassed him. This evidence dealt only with the relationship between Warren and Westerman and no "other" sexual behavior.

Additionally, Rule 412(b)(2) employs a balancing test rather than the specific exceptions stated in 412(b)(1). Assuming for the sake of clarification that the testimony at issue fell within Rule 412 as evidence of other sexual behavior, which we do not, it would be admissible under the balancing test. DYS had a lengthy and specific statement from Westerman discussing Westerman's discomfort with alleged advances made by Warren on several occasions. The relationship between Warren and Westerman was in dispute. As such, Warren could certainly present her own evidence about their interactions during the specific times at issue, and whether any alleged advance would have been welcomed by Westerman under the circumstances. The probative value of this evidence substantially outweighs any unfair prejudice that it might produce. The district court conducted a thoughtful review of this evidence and its admittance was not an abuse of discretion.

## I.    Warren's Appeal

Warren also appeals, claiming that the trial court erred in amending the judgment to reduce the compensatory damage awards.[4] Warren asks that the original jury verdict be reinstated.  This argument fails because the district court did not reduce the award per se.  Rather, the court determined that instead of holding DYS and Prejean each liable for Warren's compensable injury, they are instead jointly and severally liable.  As a result, Warren is awarded $210,000 jointly and severally from DYS and Prejean for lost wages and other damages on her claims of sex discrimination and retaliation, in addition to the award of attorney fees and punitive damages.  We review this amended judgment for abuse of discretion. Grabinski, 136 F.3d at 572.

During closing arguments, Warren encouraged the jury to find $60,000 in actual damages and three times that amount, or $180,000 in other damages.  On the claim against Prejean individually, Warren pointed out the punitive damage claim to the jury and explained that punitive awards are awarded for extraordinary misconduct such as that she claimed to have shown to the jury at trial.  The jury, in fact, awarded Warren what she requested, and the district court correctly amended the judgment to reflect the appropriate amount due Warren.  We find that the district court did not abuse its discretion and affirm the amended judgment.  See Jackson v. City of St. Louis, 220 F.3d 894, 897 (8th Cir. 2000).

---

[4]We note that Warren has since abandoned her argument that the court should overturn Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993) (factoring fees for computer legal research as a component of the attorney's hourly rate), thus we do not entertain such claim today.

## III. CONCLUSION

For the reasons set forth in this opinion, we affirm the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.