**Barbara Elaine NELSON, Plaintiff,**

v.

**State of KANSAS, Defendant.**

**No. 99–4184–DES.**

United States District Court,
D. Kansas.

Aug. 21, 2002.

---

Arthur E. Palmer, Anne M. Kindling, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Andrew R. Ramirez, Tammy M. Somogye, Lathrop & Gage L.C., Overland Park, KS, for plaintiff.

Lisa A. Mendoza, Edward F. Britton, Jr., Kansas Department of Corrections, Topeka, KS, for defendant.

### *MEMORANDUM AND ORDER*

MARTEN, District Judge.

This matter is before the court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 103). In its motion, defendant contends the court lacks subject matter jurisdiction due to defendant's Eleventh Amendment immunity. Defendant briefly addressed this issue in its Trial Brief (Doc. 98) and plaintiff responded to defendant's claim in her Response to Defendant's Trial Brief (Doc. 104). The court has carefully reviewed the parties' filings and is now prepared to rule.

## I. BACKGROUND

Plaintiff brought this case against the State of Kansas, alleging claims of sexual harassment, disparate treatment, discriminatory discharge, and retaliatory discharge. Defendant sought summary judgment on all claims. In a previous order, the court granted summary judgment on all claims except plaintiff's claim of retaliatory discharge. *Nelson v. Kansas,* No. 99–4184, 2001 WL 584436 (D.Kan. May 24, 2001). The case proceeded to trial on August 19, 2002. On the morning trial was set to begin, defendant filed the motion currently before the court. The court took the motion under advisement and now denies the motion.

## II. DISCUSSION

Defendant claims the court lacks jurisdiction in this case because the State of Kansas is entitled to Eleventh Amendment immunity. The Eleventh Amendment, on its face, applies to prevent suits against a state by citizens of another state in federal court. *See* U.S. Const. amend. XI. The Supreme Court, however, has interpreted the amendment as also shielding states from suits brought by its own citizens. *See Board of Trustees of the Univer. of Ala. v. Garrett,* 531 U.S. 356, 365, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The Supreme Court stated that, "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Garrett,* 531 U.S. at 365, 121 S.Ct. 955 (citing *Kimel v. Florida Board of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)).

The Eleventh Amendment's guarantee, however, may be abrogated by Congress. To abrogate states' Eleventh Amendment immunity, Congress must unequivocally intend to do so, and it must " 'act pursuant to a valid grant of constitutional authority.' " *Garrett,* 531 U.S. at 363, 121 S.Ct. 955 (quoting *Kimel,* 528 U.S. at 73, 120 S.Ct. 631.). The Supreme Court has held that Congress may properly abrogate states' Eleventh Amendment immunity, and thus subject the states to suit in federal court, when it does so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. *Garrett,* 531 U.S. at 364, 121 S.Ct. 955 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)).

Pursuant to Section 5 of the Fourteenth Amendment, Congress may enact "appropriate legislation" to enforce the guarantees contained in Section 1 of the Fourteenth Amendment. The guarantees of Section 1 of the Fourteenth Amendment are as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend XIV, § 1. Congress's power to enforce this section of the Fourteenth Amendment may only be exercised in response to actual "state transgressions." *Garrett,* 531 U.S. at 368, 121 S.Ct. 955. Further, if the legislation enacted in an attempt to enforce Section 1 of the Fourteenth Amendment reaches beyond the actual guarantees of the amendment, the legislation must exhibit " 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.' " *Id.* at 365, 121 S.Ct. 955 (quoting *City of Boerne v. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)).

Recently, the Supreme Court has struck down anti-discrimination legislation, as it applies to states, on the basis that Congress exceeded the power granted to it

pursuant to Section 5 of the Fourteenth Amendment. *See Garrett,* 531 U.S. at 374, 121 S.Ct. 955 (striking down Title I of the Americans with Disabilities Act ("ADA") as it applies to the states); *Kimel,* 528 U.S. at 91, 120 S.Ct. 631 (holding that Congress's attempt to abrogate the states' Eleventh Amendment immunity in the Age Discrimination in Employment Act ("ADEA") was not a valid exercise of its power under Section 5 of the Fourteenth Amendment). Defendant relies on these cases in challenging the court's subject matter jurisdiction.

In *Garrett,* the Supreme Court held that legislation seeking to abrogate the states' sovereign immunity from suit by private individuals for money damages under Title I of the ADA was not a valid exercise of its power under Section 5 of the Fourteenth Amendment. *Garrett,* 531 U.S. at 374, 121 S.Ct. 955. The court reached this conclusion by first examining the limitations Section 1 of the Fourteenth Amendment places on the states' treatment of individuals with disabilities. In making that determination, the court looked to its prior decisions examining the constitutional protections afforded to persons with disabilities under the Fourteenth Amendment. The Supreme Court noted that classifications based on disabilities are legitimate so long as they are rationally related to a legitimate state interest. *Garrett,* 531 U.S. at 366, 121 S.Ct. 955 (citing *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). *See also Kimel,* 528 U.S. at 83, 120 S.Ct. 631 (holding that classifications based on age do not offend the Fourteenth Amendment if they are "rationally related to a legitimate state interest."). In other words, under a rational basis review, classifications based on age or disability will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court]

can only conclude that the [government's] actions were irrational." *Kimel,* 528 U.S. at 84, 120 S.Ct. 631 (citing *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)).

After the court determined the level of protection provided by the Fourteenth Amendment, the next step was determining whether Congress had identified a history and pattern of unconstitutional employment discrimination by the states against the disabled. In making this determination, the Court was mindful that only discriminatory conduct that was not rationally related to a legitimate state interest is considered unconstitutional. The Court concluded that the ADA did not adequately identify a pattern of irrational discrimination by the states against those with disabilities. *Garrett,* 531 U.S. at 369–70, 121 S.Ct. 955. *See also Kimel,* 528 U.S. at 91, 120 S.Ct. 631 (holding that ADEA's abrogation of the Eleventh Amendment exceeded Congress's authority under the enforcement clause of the Fourteenth Amendment because the legislative record reveals that Congress had no reason to believe that state governments were "unconstitutionally discriminating against their employees on the basis of age.").

The *Garrett* Court further found that even if Congress had identified a pattern of unconstitutional discrimination, the rights and remedies contained in the ADA, specifically the accommodation provisions, were not congruent or proportional to the targeted constitutional protections. As an example, the court noted that it would be rational, and therefore constitutional, for a state to save resources by hiring employees who could make use of existing facilities. But, the ADA's requirement that employers "make existing facilities used by employees readily accessible to and usable by individuals with disabilities," far ex-

ceeds what is constitutionally required on a rational basis review. *Garrett*, 531 U.S. at 372, 121 S.Ct. 955; 42 U.S.C. §§ 12112(5)(B), 12111(9). The Court further noted that the ADA forbids " 'utilizing standards, criteria, or methods of administration' that disparately impact the disabled, without regard to whether such conduct has a rational basis." *Garrett*, 531 U.S. at 372, 121 S.Ct. 955 (quoting 42 U.S.C. § 12112(b)(3)(A)). With that, the Court found that if it were to uphold the ADA, it would be allowing Congress to "rewrite Fourteenth Amendment law laid down by [the] Court" as it applies to persons with disabilities. *Garrett*, 531 U.S. at 374, 121 S.Ct. 955.

■ In reliance on the analysis set forth in *Garrett*, defendant contends that the legislative history of Title VII, with respect to its prohibition against gender discrimination, is constitutionally deficient. Specifically, defendant argues that the legislative history does not identify a pattern or practice of irrational state discrimination in employment against individuals based on their gender. Relying on the alleged absence of legislative history, defendant contends that Congress overstepped its Section 5 authority in abrogating the states' Eleventh Amendment immunity under Title VII. Defendant, however, fails to recognize the other portions of the analysis on which the holding in *Garrett* relies.

As a preliminary matter, the court notes that at this stage of the litigation, plaintiff's only remaining claim involves retaliation, not gender discrimination. Defendant does not argue that Congress did not properly abrogate the states' Eleventh Amendment immunity in regard to the retaliation portion of Title VII. Defendant only argues that Title VII did not validly abrogate the states' Eleventh Amendment immunity as it applies to gender discrimination. Even if defendant had suggested

the retaliation provisions of Title VII exceeded Congress's Section 5 power, the court's position would not change.

In this regard, the court is persuaded by the Eighth Circuit's opinion in *Warren v. Prejean*, No. 01–3591, 01–3592, 2002 WL 1842234 (8th Cir. Aug.14, 2002) (Published Opinion). In *Warren*, the Eighth Circuit rejected the argument that the retaliation provision of Title VII exceeded Congress's authority to abrogate the State of Missouri's Eleventh Amendment immunity. Appellants argued that the retaliation provision of Title VII was not a valid exercise of Congress's Section 5 power because Congress failed to identify widespread patterns of retaliation against employees for filing internal grievances complaining of gender discrimination. In rejecting this argument, the court noted that the Eighth Circuit has consistently held that Congress validly abrogated Eleventh Amendment immunity by enacting Title VII. *Warren*, 301 F.3d 893, 898 (citing *Maitland v. Univ. of Minn.*, 260 F.3d 959, 964 (8th Cir.2001); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 626–27 (8th Cir.2001); *Winbush v. Iowa*, 66 F.3d 1471 (8th Cir.1995)). Based on that authority, the court found that "the retaliation provision of Title VII is an adequate exercise of Congress' authority under section 5 of the Fourteenth Amendment." *Warren*, 301 F.3d 893, 899–900. The court further noted that the lack of legislative history specifically addressing retaliation is not dispositive because "such a specific finding is not necessarily determinative of the issue . . . [and][s]uch parsing of the legislative findings with regard to Title VII is unnecessary." *Id.*

■ To the extent defendant argues that plaintiff's retaliation claim relies on the gender provisions of Title VII, its arguments are also rejected. *Garrett* and *Kimel* reveal the level of constitutional protection afforded to the group at issue

by the Fourteenth Amendment is directly linked to whether the statute in question validly abrogated the states' Eleventh Amendment immunity. Unlike the disability classifications at issue in *Garrett* and the age classifications at issue in *Kimel*, which were subject to a rational-basis review, classifications based on gender are reviewed under a stricter test. Gender classifications are constitutional only if they serve " 'important governmental objectives and . . . the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Kimel*, 528 U.S. at 83, 120 S.Ct. 631 (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982)). In *Kimel*, the Court noted that age classifications, "unlike governmental conduct based on race or *gender*, cannot be characterized as 'so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.' " *Kimel*, 528 U.S. at 83, 120 S.Ct. 631 (citing *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249) (emphasis added). More plainly, governmental gender classifications, must have an "exceedingly persuasive justification" to be permitted under the Fourteenth Amendment. *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). This difference in standards is important because it defeats defendant's contention that Title VII's legislative history, like that of the ADA or ADEA, must show a pattern of irrational gender discrimination. *See Kimel*, 528 U.S. at 84, 120 S.Ct. 631 (distinguishing between state discrimination on the basis of age, which requires rational review under the Fourteenth Amendment, and state discrimination on the basis of race or gender, which requires higher standards of review and "a tighter fit between the discriminatory means and the legitimate ends they serve.").

Second, defendant's argument that the legislative history is inadequate to support the remedies for gender discrimination found in Title VII, can be dismissed without reviewing thousands of pages of legislative history. The Supreme Court, in *Kimel*, recognized that those who suffer discrimination on the basis of their gender, have been subjected to a history of purposeful unequal treatment. *Kimel*, 528 U.S. at 83, 120 S.Ct. 631. Furthermore, the Supreme Court has recognized that lack of legislative history indicating a pattern and history of discrimination is not determinative of whether Congress properly exercised its Section 5 power. *Kimel*, 528 U.S. at 91, 120 S.Ct. 631. *See also Siler–Khodr v. Univ. of Tex.*, 261 F.3d 542, 550 (5th Cir.2001) (stating that the "historical record clearly documents state discrimination on the basis of gender. Hence, the lack of further Congressional findings regarding gender discrimination by the states is less significant in importance.").

Finally, defendant does not have support for its position. In fact, all of the authority uncovered by the court is contrary to defendant's position. Although the Tenth Circuit has not spoken on the issue, there is authority for the proposition that the states' Eleventh Amendment immunity was properly abrogated in Title VII, including the gender provisions. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that Title VII's authorization of federal court jurisdiction to award money damages against a state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment because in doing so, Congress properly exercised its Section 5 powers. While *Fitzpatrick* did not decide the exact issue that is currently before the court, the court finds that the decision is persuasive authority for the proposition that Title VII gender discrimi-

nation claims brought against the state are not barred by the Eleventh Amendment. *See Maitland,* 260 F.3d at 964 (finding that *Fitzpatrick* is persuasive authority for the proposition that sex-discrimination claims brought against the state by male-employees are not barred by the Eleventh Amendment).

Additionally, the Eighth Circuit has, on a number of occasions, determined that in enacting the gender discrimination portions of Title VII, Congress validly abrogated the states' Eleventh Amendment immunity. *See Maitland,* 260 F.3d at 964; *Okruhlik,* 255 F.3d at 626–27; *Winbush,* 66 F.3d at 1471. The court finds the Eighth Circuit's decision in *Okruhlik* especially persuasive. In that case, the court determined whether Congress validly abrogated the Eleventh Amendment immunity in enacting Title VII. The State of Arkansas argued, just as defendant has argued in this case, that Congress did not validly abrogate the Eleventh Amendment because it failed to identify a history and pattern of unconstitutional race and gender employment discrimination by the states. In rejecting this argument, the court noted that the Supreme Court has indicated that " 'lack of support in the legislative record is not determinative' " on this issue. *Okruhlik,* 255 F.3d at 624 (quoting *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999)). The court further noted that contrary to the State's contention, there was a plethora of support in the congressional record identifying a pattern of discrimination by the states. *Id.* at 625 (identifying congressional hearing and reports detailing racial and *gender* discrimination by the states).

## III. CONCLUSION

For the reasons stated above, defendant's motion to dismiss for lack of subject matter jurisdiction shall be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Defendant's Motion to Dismiss (Doc. 103) is denied.